**K&K JUMP START/CHARGERS, INC. and Bonnet Enterprises, LLC., Plaintiffs,**

v.

**SCHUMACHER ELECTRIC CORP., Defendant.**

**No. 98–0905–CV–W–6.**

United States District Court, W.D. Missouri, Western Division.

June 7, 2000.

Richard R. Johnson, Shook Hardy & Bacon L.L.P., Kansas City, MO, for Plaintiffs.

Gerald M. Kraai, Shughart Thomson & Kilroy PC, Kansas City, Richard A. Zachar, Vedder Price Kaufman & Kammholtz, Chicago, IL, for Defendant.

## MEMORANDUM AND ORDER

SACHS, District Judge.

Pending are defendant's motions for new trial or for judgment as a matter of law. I now decide that defendant is entitled to prevail in this patent infringement case as a matter of law, notwithstanding plaintiffs' trial success with the jury. I rely on the second point on which I requested briefing in my post-trial memorandum, Doc. 108.

On reconsideration of a pretrial issue belatedly presented a few days before trial (Doc. 84) I conclude that *Tronzo*[1] controls, and that the backdating of plaintiffs' rights to the Canadian application, which is essential to plaintiffs' claim, cannot occur. I conclude there is a fatal variance between the Canadian claim and the allegedly infringing items.[2]

The test in *Tronzo* is whether the inventor was "possessed" of the "subject matter" (the ultimate product, as claimed in the United States) when he made the Canadian claim. He was not. Mr. Srol had no more than what is drawn, an insulated cap or covering and a "partition" extending inward from the end of the cap for use in clamping the booster cable alligator jaws. The *Tronzo* ruling means that any distinct change in design (from partition to pin, for example) does not relate back. The *Tronzo* panel's analysis on this point is *not* based on function or practicality, which is the issue in the equivalency portion of the *Tronzo* ruling, dealing with other claims.

There is nothing whatsoever in the Canadian application that suggests the partition system was simply one method of attaching an alligator clip. There is also nothing that explicitly or implicitly includes in general terms or other words the bar or pin system of attachment that is the target of this litigation.

The parties may question whether my liberal *Markman* ruling (Doc. 52) is consistent with what I am now concluding. What I was attempting to do in that ruling was to construe the claims asserted in this country as broadly as reasonably necessary to frustrate cheaters.[3] I am satisfied that the policy of patent law would defeat changes by a party without a patent that are functionally insubstantial.

It is possible, although I do not concede, that I gave the "tab" term in the application filed in the United States too loose a construction when I concluded it covered the Schumacher product, with its bar or pin. I continue to believe, however, that

1. *Tronzo v. Biomet, Inc.,* 156 F.3d 1154 (Fed. Cir.1998).

2. For present purposes I assume, with plaintiffs, that the claims in the patent issued in the United States adequately refer to the elements of the defendant's devices. A nonparty reader unfamiliar with this case may get background in *K & K Jump Start/Chargers, Inc. v. Schumacher Electric Corp.,* 82 F.Supp.2d 1012 (W.D.Mo.2000).

3. "Srol's patent, and all patents, would be useless if subsequent inventors could avoid infringement by deviating ... in ways that aren't material to the invention itself." Doc. 52, p. 3.

"tab" is a loose term that might include a bar. If another descriptive term is useful (and the parties have suggested no substitute) I would say a "tab" is an internal "attachment." That would seem to cover a bar or other form of pin.

Schumacher is right, however, that the Canadian reference to a "partition" is quite different from the defendant's use of a bar. The bar extends horizontally between the sides of the cap. P.Exh. 10A, P.Exh. 12A. The partition extends vertically from the end of the cap. *Tronzo* illustrates a rule that such a difference in design defeats backdating.

The fatal variance in *Tronzo* was that an artificial hip socket was described in the patent as a "truncated cone" or simply a cup of "conical shape" while the allegedly infringing item was a cup in hemispherical shape. In other words, complete curvature was a feature of the allegedly infringing cup while the sides of a cone-shaped cup would be straight.[4]

The *Tronzo* panel ruled that nothing in the original patent suggested that the inventor was possessed of a cup without the straight edges appearing in a cone. This was ruled fatal to use of the date on which the parent application was filed.

It seems clear that the *Tronzo* variance was considerably less dramatic than the variance here between a partition in one part of the container and a bar installed in a different location.

While there is a strong public policy against permitting trivial modifications to defeat patent rights, there is apparently no such policy in favor of backdating when there have been modest changes. Moreover, the modification that occurred in the United States (from "partition" to "tab"— construed to include a bar or other attachment) may not seem to amount to much, but the whole invention is painfully simple.

Although not necessary to this dispositive ruling, it may be useful to indicate that I am presently unconvinced that defendant could score a *Tronzo* victory by showing that the allegedly infringing system escapes the patent because (1) the alligator clips are now largely insulated, except for the teeth, and (2) the latest version has a protective switch. These may reduce the need for the insulated cap with a tab or pin, but I doubt that the claim itself becomes flawed simply because its described usefulness may be greatly reduced. On the other hand, I do remain inclined toward the belief that the Sprouse patent, relied on by defendant as an alternate basis for prevailing, was pursued with reasonable diligence and that the jury was either misdirected or unduly influenced by other considerations when it rejected that defense.[5]

For the reasons stated, judgment shall be entered in favor of defendant. SO ORDERED.

---

**4.** As in this case, the claim in *Tronzo* that could not be backdated was stated in more generic terms—simply as a "cup."

**5.** It is quite unlikely that I would accept that aspect of the verdict in entering judgment. The question is, however, mooted by this ruling.